**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                No. CR 15-4112 RB

ROBIN LEE LOVELACE,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Ms. Lovelace's Motion for Compassionate Release, filed on June 5, 2020. (Doc. 312.) Having reviewed the motion, the record, and the applicable law, the Court finds the motion is not well-taken and should be **DENIED WITHOUT PREJUDICE**.

**I.    Background**

On March 9, 2019, Ms. Lovelace pled guilty to a Rule 11(c)(1)(C) plea agreement to 11 counts of a 24-count Indictment charging her and seven co-conspirators with a variety of offenses, including conspiracy to possess with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Docs. 3; 101–02.) The Court accepted the plea agreement and sentenced Ms. Lovelace to 144 months. (Docs. 176; 178.) Ms. Lovelace has served approximately 57 months or 40 percent of her sentence and has a projected release date of February 20, 2026. (*See* Doc. 315 at 2.)

Ms. Lovelace now moves the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to reduce her sentence due to the COVID-19 pandemic. (Doc. 312.)

## II.     Discussion

### A.     The Court may decide whether "extraordinary and compelling reasons" exist.

Ms. Lovelace seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." (*See* Doc. 312 at 4.) Prior to the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [she] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Ms. Lovelace filed such a request with FMC Carswell on April 8, 2020. (Doc. 307-1.) The warden denied her request on April 9, 2020 (Doc. 312-2); thus the Court finds that she has exhausted her administrative remedies for purposes of this Opinion. (*See* Doc. 315 at 3.)

Before the Court turns to the merits of Ms. Lovelace's motion, it must analyze whether it has discretion to determine that the current pandemic, coupled with Ms. Lovelace's underlying health conditions, constitute extraordinary and compelling reasons sufficient to reduce her sentence under § 3582(c)(1)(A)(i). Congress has not defined what constitutes extraordinary and compelling reasons for purposes of this statute, but the Sentencing Commission published an applicable policy statement. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to § 1B1.13 provide that "extraordinary and compelling reasons exist" where the defendant has certain medical conditions, where the defendant is at least

65 years old and meets other qualifying circumstances, and where the defendant has qualifying family circumstances. *See id.* app. §§ (1)(A)–(C). They also include a fourth "catchall" provision that allows the Director of the BOP to determine whether "other reasons" exist that are "extraordinary and compelling" to warrant a sentence reduction. *Id.* § (1)(D). Ms. Lovelace brings her motion under this catchall provision. (Doc. 312 at 5.) Because the policy statement constrains this decision to the Director of the BOP, the issue is whether the Court can make the same determination. Ms. Lovelace argues that the policy statement, which was published prior to the First Step Act, is outdated, and that the First Step Act extended the Court's authority to make such a decision in lieu of the Director. (*See* Doc. 316 at 2–4.) The Government disagrees and argues that courts do not have "discretion to craft their own justifications for a sentence reduction . . . ." (Doc. 315 at 11.) For the reasons discussed below, the Court finds that Ms. Lovelace's position is more persuasive.

Congress passed the First Step Act in part because the BOP had managed the compassionate release program so poorly. *See United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, ⸺ F. Supp. 3d. ⸺, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020) (discussing Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)). The Act allows "prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role.'" *Id.* (footnote omitted). "Before the First Step Act's amendments to § 3582, it made sense that the BOP would have to determine any extraordinary and compelling reasons— only the BOP could bring a motion for a reduction of sentence under § 3582(c)(1)(A)." *United States v. Cantu*, 423 F.Supp.3d 345, 351 (S.D. Tex. 2019). "But defendants no longer need the blessing of the BOP to bring such motions. The BOP in fact may never weigh in or provide

guidance when a § 3582(c) motion is brought by a defendant." *Id.* (citation omitted); *see also Rodriguez*, 2020 WL 1627331, at *3 (noting that the First Step Act allows courts to "grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to the prisoner's compassionate release request in a timely manner") (quoting *United States v. Young*, No. 2:00-cr-00002-1, ––– F. Supp. 3d –––, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020)).

While the First Step Act significantly changed § 3582(c)(1)(A), the Commission has not updated the applicable policy statement—hence the application note at issue here.[1] But the application note is not the only part of § 1B1.13 that—if followed to the letter—seemingly ties this Court's hands. In fact, "[t]he very first sentence of § 1B1.13 constrains the entire policy statement to motions filed solely by the BOP." *Rodriguez*, 2020 WL 1627331, at *3 (citing § 1B1.13 ("*Upon motion of the Director of the [BOP]* . . . the court may reduce a term of imprisonment")) (emphasis added). The Government acknowledges that "[t]he policy statement refers only to motions filed by the BOP Director" but advises the Court to ignore that language due to "the lack of any plausible reason to treat motions filed by defendants differently from motions filed by [the] BOP . . . ." (Doc. 315 at 8 n.3.) It then offers an allegedly plausible reason to strictly abide by the similarly outdated application note: it argues that *Dillon v. United States*, 560 U.S. 817 (2010), "which makes Sentencing Commission policy statements authoritative, prohibits [courts] from straying from the Sentencing Commission's pre-First Step Act commentary." *See United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *12 (E.D. Pa. July 6, 2020). (*See also* Doc. 315 at 10–11.)

---

[1] Nor will § 1B1.13 be updated in the foreseeable future, as the Sentencing Commission "lacks a sufficient number of appointed commissioners to take this action." *Rodriguez*, 2020 WL 1627331, at *3 n.8 (citation omitted); *see also* Organization, U.S. Sentencing Commission, https://www.ussc.gov/about/who-we-are/organization (last visited July 17, 2020) (listing two voting commissioners and two non-voting *ex officio* commissioners).

The court in *Adeyemi* recently examined an identical argument under similar circumstances. It stated that in *Dillon*, "[t]he Supreme Court evaluated the same language in [18 U.S.C. §] 3582(c)(2)" that is at issue here in § "3582(c)(1)(A)(i), allowing courts to reduce a defendant's sentence if 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Adeyemi*, 2020 WL 3642478, at *12 (footnote omitted). The defendant in *Adeyemi* conceded that "*Dillon*'s holding applies to [§] 3582(c)(1)(A)(i), making the Sentencing Commission's policy statements generally binding on" the Court. *Id.* The Supreme Court's holding in *Stinson v. United States*, 508 U.S. 36 (1993), however, provides further guidance. In *Stinson*, "the Supreme Court made Commission commentary explaining a guideline binding unless it violates the Constitution or a federal law or is plainly erroneous or inconsistent with the guideline." *Adeyemi*, 2020 WL 3642478, at *13 (footnote omitted). The *Adeyemi* court explained that the Supreme Court has "applied *Stinson* to invalidate Sentencing Commission's commentary contradictory of the plain language of a Congressional directive." *Id.* (discussing *United States v. LaBonte*, 520 U.S. 752 (1997)).

Here, both the introductory language of § 1B1.13 and the application note limiting discretion to the BOP Director regarding extraordinary and compelling circumstances contradict the plain language in § 3582(c)(1)(A)(i), which explicitly allows courts to "find[] that extraordinary and compelling reasons warrant" a sentence reduction. *See Adeyemi*, 2020 WL 3642478, at *13–14; *see also Cantu*, 423 F. Supp. 3d at 349–52 (examining "the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements" to find that § 1B1.13 cmt. n.1(D) "no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding on" courts). The *Adeyemi* court agreed with "the majority of judges who have" found that the First

5

Step Act "removed sole authority from the [BOP]" and "imbu[ed] judges with the ability to decide compassionate release motions if the [BOP] denies or defers the motion. The new compassionate release regime mandates concurrent authority between the courts and the Director of the [BOP]." *Id.* at *14; *see also Rodriguez*, 2020 WL 1627731, at *1 (gathering cases of courts that have held they have discretion to determine extraordinary and compelling circumstances).

> The First Step Act's . . . significant amendment requires the Sentencing Commission to alter policy statement section 1B1.13 and its resulting commentary, including the introductory phrase of the policy statement ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A) . . ."), commentary Note 4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons)", and the introductory phrase to commentary Note 1(D). Because the Commission has been unable to alter its policy statement and commentary due to lack of a quorum, we cannot imply the Commission intends us to follow an outdated commentary through its inaction. And we are not hamstringed because the Sentencing Commission has failed to update the pertinent guidance. The plain language of section 3582(c)(1)(A)(i), not just Congress's intent to improve and increase compassionate release, contradicts the introductory phrase of Note 1(D) to the Commission's policy statement.

*Adeyemi*, 2020 WL 3642478, at *14 (footnotes omitted). The Court agrees with this reasoning and finds that it has authority to determine what constitutes extraordinary and compelling reasons to warrant a sentence reduction.

> **B.     Ms. Lovelace has underlying health conditions that might place her at risk of severe illness in a facility experiencing a significant increase in COVID-19 cases.**

Ms. Lovelace asserts that extraordinary and compelling circumstances exist due to the unprecedented COVID-19 pandemic. (*Id.* at 7–11.) She argues that as a 60-year-old individual with asthma, hypertension, and hyperthyroidism, "she is considered high risk for complications and even death should she contract COVID-19." (*See id.* at 2, 11.) She is also a cancer survivor and has recently been diagnosed with nodules on her lungs and a benign pelvic mass that are being monitored. (*Id.* at 11.) The Government argues that the CDC lists only one of Ms. Lovelace's

6

conditions—asthma—as a medical condition that may put individuals at increased risk for severe illness if they contract COVID-19. (Doc. 315 at 11–12 (citing *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 17, 2020)).) The CDC has recently updated this list, however, and the list now also includes hypertension. *See People with Certain Medical Conditions* (noting that it was last updated June 25, 2020).[2] And while the Government discounts Ms. Lovelace's asthma as minor (Doc. 315 at 12 (noting that Ms. Lovelace does not require daily use of her inhaler)), the CDC cautions that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *See People with Certain Medical Conditions*. Similarly, the CDC warns that "[a]s you get older, your risk for severe illness from COVID-19 increases." *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 17, 2020). "For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s." *Id.*

The Government argues that the cases Ms. Lovelace cites in support of her motion are "distinguishable as they involve unopposed motions, critically ill defendants, defendants suffering from a myriad of high-risk conditions, or defendants who have serious illnesses and have served a far greater percentage of their sentence than" Ms. Lovelace. (Doc. 315 at 13 (citations omitted).) Further, at the time the Government submitted its response to Ms. Lovelace's motion, "there were

---

[2] Ms. Lovelace also argues that the radiation she underwent as cancer treatment in October 2019 "*can* suppress or weaken the immune system." (*See* Docs. 316 at 5 (emphasis added); 312 at 17.) The source she cites in support, however, states that radiation therapy *can temporarily* damage one's immune system. *See Why People with Cancer are More Likely to Get Infections*, American Cancer Society, https://www.cancer.org/treatment/treatments-and-side-effects/physical-side-effects/low-blood-counts/infections/why-people-with-cancer-are-at-risk.html (last visited July 17, 2020); *see also If you Are Immunocompromised*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html (last visited July 17, 2020). Ms. Lovelace does not cite to her medical records to support her contention that her immune system was or is still weakened from her radiation treatment.

no active cases of COVID-19 in inmates housed at FMC Carswell" and only one staff member with an active case. (*Id.* at 7 & n.2 (citation omitted).)

The Court registers its concern with evidence that FMC Carswell is currently experiencing a significant increase in the number of prisoners who have tested positive for COVID-19 in the past two weeks. Ms. Lovelace filed a Notice reporting that on July 2, 2020, the BOP reported that 23 inmates had tested positive for COVID-19. (Doc. 317 at 1 (citing *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 20, 2020)).) She filed another Notice reporting that the number had jumped to 127 confirmed cases among inmates as of July 12, 2020. (Doc. 319 at 1 (citing *COVID-19 Coronavirus*).) On the date of this writing, July 22, 2020, the number has again risen to 510[3] confirmed positive inmate cases and 3 confirmed positive staff cases, with 28 tests still awaiting results. *See COVID-19 Coronavirus*.

On April 3, 2020, Attorney General William Barr published a memorandum in which he recognized the country's "profound obligation to protect the health and safety of all inmates." *See Memorandum for Director of BOP*, https://www.bop.gov/coronavirus/docs/bop_memo_ home_confinement_april3.pdf (last visited July 17, 2020). He directed the BOP "to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates," particularly where certain facilities were "experiencing significant levels of infection . . . ." *Id.* As FMC Carswell currently has the second highest number of confirmed positive cases at federal facilities, *see COVID-19 Coronavirus*, the Court finds that the facility is experiencing a significant level of infection. For this reason, the Court discounts the Government's emphasis on the BOP's efforts to stem the pandemic in federal facilities. (*See* Doc. 315 at 3–7.)

---

[3] The number of confirmed positive cases represents approximately 46 percent of the total inmate population at FMC Carswell. *See FMC Carswell*, BOP, https://www.bop.gov/locations/institutions/crw/ (last visited July 22, 2020) (listing 1,119 inmates at the FMC).

8

The Government characterizes Ms. Lovelace's motion as arguing "that her sentence should be reduced by more than five years because of the COVID-19 pandemic." (*Id.* at 14.) The Court reads it differently. Ms. Lovelace, a 60-year-old individual with at least two underlying health conditions that might put her at an increased risk for severe illness if she contracts COVID-19, argues that her age, health conditions, and the documented significant and rising level of infection at FMC Carswell have created extraordinary and compelling circumstances that warrant a sentence reduction. The Court agrees that in this unprecedented situation, Ms. Lovelace's circumstances approach extraordinary and compelling. The Court declines, however, to expressly make this determination, because other factors weigh against a sentence reduction.

### C. Other considerations weigh against a sentence reduction.

In addition to finding that an extraordinary and compelling reason exists for a sentence reduction, § 1B1.13 directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines § 1B1.13 & (2).

Section 3553 requires courts to "impose a sentence sufficient, but not greater than necessary," in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142 requires courts to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

The Government argues that Ms. Lovelace's "history of distributing large quantities of methamphetamine demonstrates that she would pose a danger to public safety if released." (Doc. 315 at 16.) The Court agrees that drug crimes are serious and harmful to our communities, and Ms. Lovelace's sentence reflects the gravity of her 30-year methamphetamine habit that evolved into drug trafficking. (*See* Doc. 315 at 16 (citing Doc. 164 (PSR) ¶ 119).) Ms. Lovelace was assigned a criminal history category of III due to ten previous convictions, all of which are non-violent

barring one for disorderly conduct that involved an assault.[4] (*See* PSR ¶¶ 96–105.) The first of her convictions occurred only 15 years ago, when Ms. Lovelace was 45 years old. (*Id.* ¶ 96.)

The Government does not dispute that Ms. Lovelace has not had disciplinary issues while in custody. (*See* Docs. 312 at 19; 315; 316 at 8.) More concerning to the Court, however, is that while Ms. Lovelace asserts that she has taken "drug classes," she has presented no evidence to show that she has participated in continuing drug and alcohol counseling through a 12-step program or similar. (*See* Doc. 316 at 7.) Ms. Lovelace's long history with drugs, the conviction at issue here, and her lack of counseling are all detrimental to her request for placement: she asks the Court to place her with her daughter, Ms. Jerilyn Muñoz, upon release. (Doc. 312 at 19.) Yet, Ms. Lovelace recruited her daughter to participate in the drug conspiracy that forms the basis of her conviction. (PSR ¶ 12.) Consequently, Ms. Muñoz was also indicted and sentenced in this matter. *United States v. Muñoz*, 15cr4112, Indictment (D.N.M. Nov. 19, 2015); Judgment (Aug. 23, 2016).

The United States Probation Office (USPO) reviewed Ms. Lovelace's proposed release plan and denied it for two reasons. (*See* July 1, 2020 Pre-Release Investigation, attached as Ex. 1.) First, Ms. Lovelace's special conditions of supervised release include an order to "not communicate, or otherwise interact, with codefendant(s)/coconspirator(s) without prior approval of the probation office." (*See id.*; *see also* Doc. 178 at 6.) Second, the USPO's review of the release plan disclosed that Ms. Muñoz's husband, who lives in the home, "is currently under state supervision and has an active medicinal marijuana card." (*See* Ex. 1.) Because Ms. Lovelace and her daughter were codefendants in the drug conspiracy here and because of Ms. Lovelace's documented long-term methamphetamine habit, the Court cannot approve a placement with Ms.

---

[4] Of her ten previous convictions, six involved charges of driving on a suspended license and two involved use and/or possession of a controlled substance. (PSR ¶¶ 98–105.)

Muñoz. The Court finds such a placement would result in a danger to the community. For this reason, the Court will deny Ms. Lovelace's motion without prejudice.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Compassionate Release (Doc. 312) is **DENIED WITHOUT PREJUDICE**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

**UNITED STATES PROBATION OFFICE**
**DISTRICT OF NEW MEXICO**

*Margaret Vigil, Chief*                                                                                                              *Ron J. Travers, Deputy*

**333 LOMAS BLVD. NW, STE 170**                    *Richard Bohlken, Assistant Deputy*                    **100 NORTH CHURCH STREET**
**ALBUQUERQUE, NM 87102-9844**                    *Chris Hill, Assistant Deputy*                              **LAS CRUCES, NM 88001**
**(505) 348-2600**                                                                                                                                **(575) 528-1500**

**800 EAST 30TH STREET**                                                                                                         **500 NORTH RICHARDSON**
**BUILDING 5, SUITE A**                                                                                                            **ROOM 309**
**FARMINGTON, NM 87401**                                                                                                    **ROSWELL, NM 88201**
**(505) 325-7507**                                                                                                                        **(575) 637-7920**

**909 METRO AVENUE**                                                                                                            **120 SOUTH FEDERAL PLACE**
**GALLUP, NM 87301-5384**                                                                                                    **ROOM 304**
**(505) 726-1660**                                                                                                                       **SANTA FE, NM 87501**
                                                                                                                                                **(505) 992-3872**



July 1, 2020

E. Smith-Branton, Case Manager
Carswell FMC
P.O. Box 27066
Fort Worth, TX 76127

                                **RE:**    **Lovelace, Robin Lee**
                                **Reg#:**  **83175-051**
                                **Dkt#:**  **2:15CR04112-RB**
                                **PRE-RELEASE INVESTIGATION**

Case Manager Smith-Branton,

As indicated in your proposed release plan, Robin Lee Lovelace, has requested to release to the District of New Mexico, to reside with her daughter, Jerilyn Munoz, at 601 West Washington Ave., Artesia, New Mexico 88210; (575) 513-8206.

In speaking with Mrs. Munoz, she is willing to have no alcohol, illegal substances, or weapons at the residence, and has no objection to the search condition. It should be noted, Mrs. Munoz advised her husband is currently under state supervision and has an active medicinal marijuana card.

As part of the investigation for this release plan, the judgement and special conditions of supervised release associated with Ms. Lovelace's term of supervised release have been reviewed. She has been ordered to "not communicate, or otherwise interact, with codefendant(s)/coconspirator(s) without prior approval of the probation office". Mrs. Munoz was also charged on the initial offense along with Ms. Lovelace. Based on based upon the findings of the investigation, we are **DENYING** this release plan.

Should you require additional information, please feel free to contact me at (575) 637-7928.

Respectfully submitted:

*Eduardo Casteneda*
Eduardo Casteneda
United States Probation Officer